W. C. RITCHIE & Co. *et al.* Appellees, *vs.* JOHN E. W. WAY-
MAN, State's Attorney, *et al.* Appellants.

*Opinion filed April 21, 1910.*

1. CONSTITUTIONAL LAW—*property rights may be regulated un-
der the police power of the State.* The right of an individual to
labor and to contract with reference to labor is a property right
within the meaning of the constitution; but property rights may
be limited and regulated under the police power of the State when
the public health, safety, morals or welfare so require.

2. SAME—*legislation limiting the number of hours women shall
work in one day is within police power.* Legislation limiting the
number of hours a day women shall be allowed to work in such
employments as are carried on in mechanical establishments, fac-
tories and laundries tends to preserve the health of women and
insure strength and vigor in the children they may bear, and falls
clearly within the police power of the State.

3. SAME—*the Woman's Ten Hour law of 1909 is a valid police
regulation.* The Woman's Ten Hour Law of 1909, (Laws of 1909,
p. 212,) limiting the time to ten hours in any one day in which a
female shall be allowed to work in any mechanical establishment,
factory or laundry, is a valid and legitimate exercise of the police
power of the State. (*Ritchie v. People,* 155 Ill. 98, distinguished.)

4. SAME—*Woman's Ten Hour law is not an arbitrary discrimi-
nation as between women.* The pressure and spur under which
women must work in mechanical establishments, factories or laun-
dries where the pace is set by machinery creates a substantial dif-
ference between such employments and those where the work is
not so driving and the tendency to over-exertion is not so great,
and the putting of such establishments in a class by themselves
does not render the Woman's Ten Hour law of 1909 invalid, as an
arbitrary discrimination between women engaged in manual labor.

5. SAME—*Woman's Ten Hour law not invalid as discriminating
between men and women.* The physical structure and maternal
functions of women, and their consequent inability to perform,
without effect upon their health and the vigor of their offspring,
work which men may do without over-exertion, justify the dis-
crimination between men and women made by the Woman's Ten
Hour law of 1909.

VICKERS, J., dissenting.

APPEAL from the Circuit Court of Cook county; the
Hon. RICHARD S. TUTHILL, Judge, presiding.

WILLIAM H. STEAD, Attorney General, JOHN E. W. WAYMAN, State's Attorney, and ZACH HOFHEIMER, for appellant John E. W. Wayman:

The "act to regulate and limit the hours of employment of females in any mechanical establishment or factory," etc., (Laws of 1909, p. 212,) is a legitimate exercise of the police power of the State, is not class legislation, and is not in violation of the fourteenth amendment of the constitution of the United States, nor of section 2 of article 2 or section 22 of article 4 of the constitution of Illinois. *Muller* v. *Oregon,* 208 U. S. 412; *State* v. *Muller,* 48 Ore. 252; *Commonwealth* v. *Hamilton Manf. Co.* 120 Mass. 383; *Commonwealth* v. *Beatty,* 15 Pa. 5; *Wenham* v. *State,* 65 Neb. 394; *State* v. *Buchanan,* 29 Wash. 602; *Walker* v. *Sauvinet,* 92 U. S. 90; *Holden* v. *Hardy,* 169 id. 366.

The police power of the State, while not susceptible of exact comprehensive definition, has been described by this court as that inherent or plenary power which enables the State to prohibit all things hurtful to the comfort, safety and welfare of society, and may be termed the law of overruling necessity. *Chicago* v. *Gunning System,* 214 Ill. 628; *Chicago* v. *Dairy Co.* 234 id. 294.

WILLIAM H. STEAD, Attorney General, (SAMUEL A. HARPER, of counsel,) for appellant Edgar T. Davies:

The right to make simple contracts is not a "natural" or an "inalienable" right, as those terms are used in the organic law. 1 Andrews on Am. Law, (2d ed.) secs. 462, 550, 10, note 45; Mill on Liberty, chap. 5; 2 Bryce on Am. Com. 410; *Lochner* v. *New York,* 198 U. S. 45; Maine's Ancient Law, (Pollock) 321, 325, 326; Chanier on Roman Law, 4, 156, 160.

The Woman's Ten Hour act is within the police power of the State. Brannon on Fourteenth Amendment, 167-

175; 1 Andrews on Am. Law, (2d ed.) sec. 342a; *Beer Co.* v. *Mass,* 97 U. S. 25; Cooley's Const. Lim. (6th ed.) 704; Tiedeman on Police Lim. sec. 1; 1 Tiedeman on State and Fed. Control of Per. and Prop. p. 336; 8 Cyc. 864; *Muller* v. *Oregon,* 208 U. S. 412; *Commonwealth* v. *Hamilton Manf. Co.* 120 Mass. 383; *Wenham* v. *State,* 65 Neb. 394; *State* v. *Buchanan,* 29 Wash. 602; *Commonwealth* v. *Beatty,* 15 Pa. 5.

The act is due process of law. 8 Cyc. 1119, note 18; *Bank* v. *Okely,* 4 Wheat. 235; *Dartmouth College case,* 4 id. 581; Brannon on Fourteenth Amendment, 143, 144; *Holden* v. *Hardy,* 169 U. S. 366.

It is a reasonable health measure, as proven by statistical records and the state of the law in this and foreign countries. *Muller* v. *Oregon,* 208 U. S. 412; Freund on Police Power, sec. 313; *Commonwealth* v. *Beatty,* 15 Pa. 5.

The court should take judicial notice of actual industrial conditions as shown by statistical records and the common experience of men. *Muller* v. *Oregon,* 208 U. S. 412; 16 Cyc. 870; Cooley's Const. Lim. (6th ed.) 744.

The doctrine of *stare decisis* does not apply. *Allardt* v. *People,* 197 Ill. 501; *Stevens* v. *Pratt,* 101 id. 206; 26 Am. & Eng. Ency. of Law, (2d ed.) 162, 167.

The act does not impair the obligation of any contract. Brannon on Fourteenth Amendment, 169, 170; *New York* v. *Bristol,* 151 U. S. 567; Freund on Police Power, secs. 556, 602.

The act is not class legislation. Cooley's Const. Lim. (6th ed.) 479-481.

LOUIS D. BRANDEIS, also for appellants:

The liberty secured by section 2 of article 2 of our constitution "means not only freedom of the citizen from servitude and restraint, but is deemed to embrace the right of every man to be free in the use of his powers and faculties." *Coal Co.* v. *People,* 147 Ill. 66.

This right to liberty is, however, "subject to the restraints necessary to secure the common welfare,"—in other words, is subject to the restrictions enacted in the exercise of the police power. *Coal Co.* v. *People,* 147 Ill. 66.

While the legislature may determine when the exigency exists for the exercise of the police power, it is for the courts to determine what are the subjects for the exercise of this power, and it is necessary that the act should have some reasonable relation to the subjects of such power. The court must be able to see that the act tends in some degree to the preservation of the public health, morals, safety or welfare. It must be apparent that such end is the one actually intended, and that there is some connection between the provisions of the law and such purpose. *People* v. *Steele,* 231 Ill. 340.

The exercise of legislative discretion is not subject to review by the courts when measures adopted by the legislature are calculated to protect the public health and secure the public comfort, safety or welfare, but the measures so adopted must have some relation to the ends thus specified. *Bessette* v. *People,* 193 Ill. 334.

The legislature has power to form classes for the purpose of police regulation, if they do not arbitrarily discriminate between persons in substantially the same situation. *Lasher* v. *People,* 183 Ill. 226.

HAYNIE & LUST, (WILLIAM DUFF HAYNIE, of counsel,) for appellees:

The so-called Ten Hour law is unconstitutional and void. It takes property without due process of law, as it deprives those upon whom it operates of a valuable property right guaranteed them by the constitution of this State. *Ritchie* v. *People,* 155 Ill. 98; *People* v. *Williams,* 189 N. Y. 131; *Burcher* v. *People,* 41 Colo. 495; *Mathews* v. *People,* 202 Ill. 389; *In re Maguire,* 57 Cal. 604; *Eden*

v. *People,* 161 Ill. 296; *Glover* v. *People,* 201 id. 545; *Gillespie* v. *People,* 188 id. 176; *Bailey* v. *People,* 190 id. 28.

The law is void because it arbitrarily makes the employer criminally responsible for the acts of another who exercises his own discretion, and hence deprives him of due process of law. *Camp* v. *Rogers,* 44 Conn. 291; *Colon* v. *Lisk,* 47 N. E. Rep. 302; *People* v. *O'Brien,* 18 id. 692; *Towle* v. *Mann,* 53 Iowa, 42; *Railway Co.* v. *Lackey,* 78 Ill. 55; *Beilenberg* v. *Railway Co.* 20 Pac. Rep. 314; *Ham* v. *McClaws,* 1 Bay, 93.

The law is void because it violates the constitution, as in the subject matter of the act an entirely new and distinct act is made a criminal offense which theretofore was lawful, and such act is not embraced in the title of the statute. *Milne* v. *People,* 224 Ill. 125; *People* v. *McBride,* 234 id. 146.

The statute is void because the penalties enforced for its violation are so enormous as to amount to a confiscation of property, and it is the settled law that where the penal feature of a law is so severe, having regard to the nature of the regulation, as to intimidate property owners from enjoying their rights and from resorting to the courts for defense of their supposed rights, it is highly unreasonable and is a defiance of the equal protection of the law. *Bonnett* v. *Vallier,* 116 N. W. Rep. 885; *Railway Co.* v. *Railroad Commission,* 161 Fed. Rep. 925; *Ex parte Young,* 209 U. S. 123; *Ex parte Wood,* 155 Fed. Rep. 190; *Gas Co.* v. *New York,* 157 id. 849; *Cotting* v. *Stock Yards,* 183 U. S. 79.

The law is void because it imposes and gives to an illegally constituted body the authority to make unlawful investigations and to invade the right to personal security and liberty. *Coal Co.* v. *Miller,* 236 Ill. 149; *Loan Ass'n* v. *Keith,* 153 id. 609.

The law is void because it takes from the State's attorney and from the Attorney General powers conferred

upon them by the statutes of Illinois, its constitution and the common law. *Hunt* v. *Railroad Co.* 20 Ill. App. 282; *Life Ass'n* v. *Hunt,* 127 Ill. 257; *Attorney General* v. *Newberry Library,* 150 id. 229; *Hunt* v. *Rink Co.* 143 id. 118; *Rex* v. *Austin,* 9 Price, 142; *Attorney General* v. *Brown,* 1 Swanst. 294; *Rex* v. *Wilkes,* 4 Burr, 2570.

The law is void because it is an arbitrary, unyielding and inflexible declaration of the legislature, not adapted to varying conditions, and is therefore unconstitutional. It is not sustainable as a police regulation. *Ritchie* v. *People,* 155 Ill. 98; *People* v. *Steele,* 231 id. 340; *Glover* v. *People,* 201 id. 545; *Booth* v. *People,* 186 id. 43; *Ruhstrat* v. *People,* 185 id. 133; *Belleville* v. *Turnpike Co.* 234 id. 428; *Burcher* v. *People,* 41 Colo. 495.

It is class legislation, for it makes an act prohibitive to one class of persons which it sanctions in another, with no valid reason for such distinction existing. *Ritchie* v. *People,* 155 Ill. 98; *Burcher* v. *People,* 41 Colo. 495; *People* v. *Williams,* 189 N. Y. 131; *In re Maguire,* 57 Cal. 604; *Frorer* v. *People,* 141 Ill. 171; *Coal Co.* v. *People,* 147 id. 66; *Massie* v. *Cessna,* 239 id. 352; *Belleville* v. *Turnpike Co.* 234 id. 428; *Mathews* v. *People,* 202 id. 389; *Bessette* v. *People,* 193 id. 334; *Bailey* v. *People,* 190 id. 28; *Millett* v. *People,* 117 id. 294; *Harding* v. *People,* 160 id. 459; *Eden* v. *People,* 161 id. 296; *Chicago* v. *Netcher,* 183 id. 104; *Gillespie* v. *People,* 188 id. 176; *Ruhstrat* v. *People,* 185 id. 133; *In re Day,* 181 id. 73; *Carrollton* v. *Bazzette,* 159 id. 284; *Adams* v. *Brenan,* 177 id. 194.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of Cook county by the appellees, W. C. Ritchie & Co., an Illinois corporation, and W. E. Ritchie, its president and general manager, and Anna Kusserow and Dora Windeguth, two of the employees of said corporation, against the ap-

pellants, John E. W. Wayman, as State's attorney for Cook county, and Edgar T. Davies, chief State factory inspector for the State of Illinois, to enjoin the enforcement against W. C. Ritchie & Co. and its officers and employees, and all persons similarly situated in the State of Illinois who may become parties to this suit, of "An act to regulate and limit the hours of employment of females in any mechanical establishment or factory or laundry in order to safeguard the health of such employees; to provide for its enforcement and a penalty for its violation."

The bill avers that W. C. Ritchie & Co., an Illinois corporation, is engaged in the city of Chicago in the business of manufacturing paper boxes, paper box machinery, etc., and that W. E. Ritchie is the president and general manager of said corporation; that Anna Kusserow and Dora Windeguth, who are citizens of the United States and are of the ages of forty-five and thirty-two years, respectively, are in the employ of W. C. Ritchie & Co. in its business of manufacturing paper boxes, paper box machinery, etc., and that they have each been so employed for many years, and sets forth in detail the services which they each perform in said business. It is also averred that W. C. Ritchie & Co. have in their employ in said business, in addition to Anna Kusserow and Dora Windeguth, seven hundred and fifty females, and that during the rush season in said business, and to enable said corporation to fill its orders and comply with its contracts, it is necessary that its female employees work more than ten hours per day. It is also averred that W. E. Ritchie, as general manager of said corporation, and with the knowledge and consent of said corporation, has employed and allowed an adult female to work in said business of manufacturing paper boxes, paper box machinery, etc., more than ten hours in one day. It is also averred that the said paper box factory is situated in a well lighted, heated and ventilated building and that the conditions surrounding its employees while at work are

sanitary and healthful. It is also averred that the defendants, John E. W. Wayman, as State's attorney, and Edgar T. Davies, as chief State factory inspector, have instituted proceedings against W. E. Ritchie and the corporation for a violation of the said act, which act, exclusive of the title, reads as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That no female shall be employed in any mechanical establishment or factory or laundry in this State, more than ten hours during any one day. The hours of work may be so arranged as to permit the employment of females at any time so that they shall not work more than ten hours during the twenty-four hours of any day.

"Sec. 2. Any employer who shall require any female to work in any of the places mentioned in section 1 of this act, more than the number of hours provided for in this act, during any day of twenty-four hours, or who shall fail, neglect or refuse so to arrange the work of females in his employ that they shall not work more than the number of hours provided for in this act, during any one day, or who shall permit or suffer any overseer, superintendent or other agent of any such employer to violate any of the provisions of this act, shall be guilty of a misdemeanor and upon conviction thereof, shall be fined for each offense in a sum of not less than $25 or more than $100.

"Sec. 3. The State department of factory inspection shall be charged with the duty of enforcing the provisions of this act and prosecuting all violations thereof.

"Sec. 4. All acts and parts of acts in conflict herewith are hereby repealed."—Approved June 15, 1909; in force July 1, 1909. (Laws of 1909, p. 212.)

It is also averred that said act is unconstitutional and void, and the prayer of the bill is that the defendants be enjoined from enforcing the provisions of the said act as against the complainants.

The defendants interposed a demurrer to said bill, which was overruled, and the defendants having elected to stand by their demurrer, the court entered a decree perpetually enjoining the defendants from enforcing against the complainants, and against all other persons who are similarly situated and who may intervene in this cause, any of the provisions of said act, and the defendants have prosecuted an appeal to this court.

The case of *People* v. *Bowes-Allegretti Co.*, in which a judgment of conviction for the violation of said act has been entered against the defendants by the municipal court of Chicago and which case is now pending in this court upon writ of error, has, upon the joint motion of the parties to that case, been consolidated with this chancery suit, and that case was argued orally with the chancery suit and submitted upon the briefs filed in the chancery suit.   (See *post*, p. 557.)   The question of the jurisdiction of a court of chancery to entertain the bill filed in this case was not raised in the court below and has not been raised in this court.   We will therefore consider the errors assigned upon the records filed in the chancery suit and in the criminal case together and file but one opinion in the consolidated case.

The object of this litigation is to test the constitutionality of the act of 1909, which is generally referred to as the Woman's Ten Hour law, and the various contentions of the parties will be taken up and will be disposed of so far as we think their consideration necessary for a proper. disposition of the question involved.

It is first contended that the act of 1909, known as the Woman's Ten Hour law, is in conflict with section 2 of article 2 of the constitution of 1870, which provides that "no person shall be deprived of life, liberty or property, without due process of law," in this: that it deprives W. C. Ritchie & Co. of the right to freely contract with its female employees and the right of its female employees

to freely contract with W. C. Ritchie & Co. for their labor,—a property right,—by prohibiting adult female employees from agreeing to work, and from working, more than ten hours in any one day in the business of manufacturing paper boxes, paper box machinery, etc., as that business is carried on by W. C. Ritchie & Co. in the city of Chicago.

The legislation passed in comparatively recent years in this State, and in general by the States of the Union, has emancipated women, so that they now have the right to contract substantially as do men. It has been held by the Supreme Court of the United States in *Lochner* v. *New York,* 198 U. S. 45, that a law prohibiting men from working in bakeries more than ten hours a day, or sixty hours in a week, was an arbitrary interference with the freedom of contract guaranteed by the fourteenth amendment to the constitution of the United States, which amendment is substantially the same, so far as it guarantees to the citizen the right of freedom of contract, as is the provision of our State constitution heretofore quoted. It was conceded upon the oral argument by appellants, that if the statute now under consideration had been passed with a view to limit the employment of men in mechanical establishments, factories or laundries to ten hours during any one day it would be an arbitrary interference with the right of men to contract for their labor and unconstitutional and void. If, therefore, such an enactment would be void as to men, does it necessarily follow that such enactment must be held invalid when by its express language the enactment is limited to women, as is the statute now under consideration? This court has recently held that the disposition of property may be limited or regulated when the public interest requires that its disposition should be limited or regulated. (*City of Chicago* v. *Schmidinger,* 243 Ill. 167.) If, therefore, the public interest requires that the time which women shall be permitted to work in any mechanical establishment

or factory or laundry should be limited to ten hours in any one day, we are unable to see why this statute is not constitutional.

The right of the individual to contract with reference to labor is held inviolable under the constitution on the ground that the privilege of contracting with reference to labor is a property right, within the purview of the constitution. (*Frorer* v. *People,* 141 Ill. 171.) There inhere in the State, however, certain sovereign powers, among which powers is that characterized as the police power, which, when broadly stated, is that power of the State which relates to the conservation of the health, morals and general welfare of the public, and the property rights of the citizen are always held and enjoyed subject to the reasonable exercise of the police power by the State. If this statute can be sustained, it must be sustained, we think, as an exercise of the police power. In *City of Chicago* v. *Bowman Dairy Co.* 234 Ill. 294, it was said (p. 297) : "The police power is said to be an attribute of sovereignty and to exist without any reservation in the constitution, and to be founded upon the duty of the State to protect its citizens and to provide for the safety and good order of society." In *McPherson* v. *Village of Chebanse,* 114 Ill. 46, an ordinance prohibiting persons from keeping open their places of business in a city or village for the purpose of vending goods, wares and merchandise on Sunday was sustained as a proper exercise of the police power. In *Booth* v. *People,* 186 Ill. 43, section 130 of the Criminal Code, which declares grain option contracts to be gambling contracts, was held to be a valid police regulation. In *City of Chicago* v. *Gunning System,* 214 Ill. 628, on page 635, it was said: "The police power of the State is that inherent or plenary power which enables the State to prohibit all things hurtful to the comfort, safety and welfare of society, and may be termed 'the law of overruling necessity.' (*Town of Lake View* v. *Rosehill Cemetery Co.* 70 Ill. 191 ; *Wabash,*

*St. Louis and Pacific Railway Co.* v. *People,* 105 id. 236.) Anything which is hurtful to the public interest is subject to the police power and may be restrained or prohibited in the exercise of that power. ' (*Dunne* v. *People,* 94 Ill. 120; *Cole* v. *Hall,* 103 id. 30; *Harmon* v. *City of Chicago,* 110 id. 400.) All rights, whether tenable or untenable, are held subject to this police power.—*Northwestern Fertilizing Co.* v. *Village of Hyde Park,* 70 Ill. 634." In *City of Chicago* v. *Bowman Dairy Co. supra,* it was held the regulation of the sale of milk and cream in bottles and glass jars by a city was a proper exercise of the police power, and in *City of Chicago* v. *Schmidinger, supra,* that the bread ordinances of the city of Chicago, which fixed the size of loaves and regulated the sale of bread, were a valid exercise of the police power.

From the examples above referred to, found in adjudicated cases, it will be seen that the police power is a very broad power, and may be applied to the regulation of every property right so far as it may be reasonably necessary for the State to exercise such power to guard the health, morals and general welfare of the public. It is known to all men (and what we know as men we cannot profess to be ignorant of as judges) that woman's physical structure and the performance of maternal functions place her at a great disadvantage in the battle of life; that while a man can work for more than ten hours a day without injury to himself, a woman, especially when the burdens of motherhood are upon her, cannot; that while a man can work standing upon his feet for more than ten hours a day, day after day, without injury to himself, a woman cannot, and that to require a woman to stand upon her feet for more than ten hours in any one day and perform severe manual labor while thus standing, day after day, has the effect to impair her health, and that as weakly and sickly women cannot be the mothers of vigorous children, it is of the greatest importance to the public that the State take such measures

as may be necessary to protect its women from the consequences induced by long, continuous manual labor in those occupations which tend to break them down physically. It would therefore seem obvious that legislation which limits the number of hours which women shall be permitted to work to ten hours in a single day in such employments as are carried on in mechanical establishments, factories and laundries would tend to preserve the health of women and insure the production of vigorous offspring by them and would directly conduce to the health, morals and general welfare of the public, and that such legislation would fall clearly within the police power of the State. Legislation limiting the number of hours which women shall work in establishments similar to those enumerated in the statute now under consideration to a period of not more than ten hours in any one day has been sustained in *Muller* v. *Oregon,* 208 U. S. 412, *State* v. *Muller,* 48 Ore. 252, (120 Am. St. Rep. 805,) *Wenham* v. *State,* 58 L. R. A. (Neb.) 825, *Commonwealth* v. *Hamilton Manf. Co.* 120 Mass. 383, and *Washington* v. *Buchanan,* 59 L. R. A. (Wash.) 342.

We are of the opinion the statute limiting the time to ten hours in any one day in which a female shall work in any mechanical establishment or factory or laundry is a legitimate exercise of the police power of the State.

It is next contended that the act in question is special legislation, in this: First, that it singles out the business of those persons who are conducting mechanical establishments or factories or laundries and prohibits the employment of females in those establishments for a longer time than ten hours in any one day, while other establishments engaged in substantially the same business are permitted to employ females any number of hours in one day; second, that it has the effect to divide men and women into classes; and third, that after women have been set aside as a class, to then divide women into two classes,—that is, that wo-

men who work in mechanical establishments or factories or laundries are only permitted to work ten hours in any one day and that women who are not employed in mechanical establishments, factories or laundries are permitted to work any number of hours in any one day,—is special and class legislation and unconstitutional and void.

The business places which are enumerated by the statute,—that is, mechanical establishments, factories and laundries,—form a class by themselves, and differ from mercantile establishments, hotels, restaurants, etc., in this: that the product of those establishments enumerated in the statute is largely produced by machinery, or the employees of such establishments work with machinery, or the pace at which the employees work in such establishments is set by other employees who work with machinery. It would seem, therefore, that the legislature has not arbitrarily carved out a class of establishments in which women whose time of employment is limited to ten hours a day are to work, but that the line of demarkation between the establishments to which the ten hour limit applies and those to which it does not apply is clearly defined. In *Hawthorn* v. *People,* 109 Ill. 302, the court said (p. 311): "It [the statute] embraces all persons in the State similarly engaged. If all laws were held unconstitutional because they did not embrace all persons, few would stand the test. * * * A law is general, not because it embraces all of the governed, but that it may, from its terms, when many are embraced in its provisions, and all others may be when they occupy the position of those who are embraced." In *Gundling* v. *City of Chicago,* 176 Ill. 340, it was held that the city might regulate the sale of cigarettes, and that the law was not special legislation by reason of the fact that it did not require a license of all persons who sold tobacco in the city. In *City of Chicago* v. *Bowman Dairy Co. supra,* it was held that the city might regulate the sale of milk and cream in bottles or glass jars without the ordi-

nance being subject to the objection of being special legislation because all persons who sold milk or cream in the city did not fall within the terms of the ordinance. We do not think the statute objectionable on the ground that it amounts to special legislation.

We have already pointed out that the physical structure and maternal functions of women place them at such a disadvantage in the struggle for existence as to form a substantial difference between the sexes,—a difference which, in our judgment, is of such a substantial character as to form a basis for legislation without making the legislation subject to the objection that it was not a proper exercise of the police power. The differences existing between the sexes has often formed the basis of a classification upon which to found legislation. It is this distinction, when used as a basis for legislation, which authorizes legislation exempting women from military and jury service and from working upon the public highways or working in mines, and which permits men to enjoy, alone, the elective franchise and to hold public office, and fixes their status as the head of the family in exemption and homestead laws.

As to the third objection, that women by the act are divided into two classes,—that is, those whose service is limited to a ten hour day and those whose service is not thus limited,—we have also already suggested the answer to this contention, namely, that those women whose service is limited to a ten hour day work in establishments whose product is produced by machinery, or whose employees work with machinery, or the pace at which such employees work is set by other employees who work with machinery. We think that women thus situated, while at work, are under a pressure and spur which is much more likely to drive them to over-exertion when exhausted by long continued effort and thereby to impair their health, than are their more favored sisters likely to be driven who are engaged in an employment which is not forced at all

times up to the limit of production by the agencies of steam, electricity or other motor power when applied to machinery. There is, therefore, we think, an obvious and clear distinction between the two classes of women when working in the class of employment covered by the statute and in other vocations of life, by reason of their environment when at work. It is well settled that legislation which applies only to a certain class of citizens is not, under all circumstances, class legislation. A law that is made applicable to only one class of citizens, however, must be based upon some substantial difference between the situation of that class and other individuals to which it does not apply. Here we think that substantial difference exists. (*Harding* v. *People,* 160 Ill. 459; *Gillespie* v. *People,* 188 id. 176; *Horwich* v. *Walker-Gordon Laboratory Co.* 205 id. 497; *Starne* v. *People,* 222 id. 189; *Jones* v. *Chicago, Rock Island and Pacific Railway Co.* 231 id. 302.) We therefore conclude the act now under consideration not subject to the objection that it is class legislation because it does not apply to all women who perform manual labor.

It is contended by appellees that the cases of *Ritchie* v. *People,* 155 Ill. 98, *People* v. *Williams,* 189 N. Y. 131, (81 N. E. Rep. 778,) and *Burcher* v. *People,* 41 Colo. 495, (124 Am. St. Rep. 143,) hold that legislation similar to the Illinois act of 1909 is unconstitutional. The Colorado statute considered in *Burcher* v. *People* provided: "No woman of sixteen years of age or more shall be required to work or labor for a greater number than eight hours in the twenty-four hour day in any mill, factory, manufacturing establishment, shop or store, for any person, agent, firm, company, co-partnership or corporation, where such labor, work or occupation, by its nature, requires the woman to stand or be upon her feet in order to satisfactorily perform her labors, work or duty in such occupation or employment." The defendant was convicted in the trial court, under this statute, for employing a woman in his

laundry in the city of Denver to work for more than eight hours per day. The case went to the Supreme Court and was there reversed on two grounds: First, that the subject matter of the section under which the conviction was had was not "clearly or at all" expressed in the title of the act; and secondly, the General Assembly had not, in the act then under consideration or elsewhere, declared or considered the laundry business an occupation or labor therein injurious or dangerous to health, life or limb, which was held to be an essential condition precedent to the validity of an enactment of this character, whether it was based upon the eight hour amendment to the constitution adopted in 1902, or upon the general unwritten police power of the State. It will therefore be seen that the *Burcher case* is not an authority either as to the validity or invalidity of a statute limiting the number of hours which women shall be permitted or required to work in any one day, as the validity of the statute, in so far as it prohibited women from working more than eight hours in any one day, was not considered or decided in that case.

In *People* v. *Williams* the statute which the defendant was charged with having violated provided that "no minor under the age of eighteen years, and no female, shall be employed, permitted or suffered to work in any factory in this State before six o'clock in the morning or after nine o'clock in the evening of any day, or for more than ten hours in any one day except to make a shorter work day on the last day of the week, or for more than sixty hours in any one week, or more hours in any one week than will make an average of ten hours per day for the whole number of days so worked." The charge upon which the defendant was convicted was that a woman twenty-one years of age was employed, permitted and suffered to work by the defendant in his book binding establishment in the city of New York at twenty minutes after ten o'clock in the evening. This case, it will also be observed, does not con-

sider or pass upon the validity of that portion of the statute which makes it unlawful to permit or suffer a woman to work in any of the prohibited employments more than ten hours per day, and the court limited, in express terms, the decision to the validity of that portion of the act which prohibited a woman from working before six o'clock in the morning or after nine o'clock in the evening, and held a statute which prohibited a woman from working in the prohibited employment between nine o'clock P. M. and six o'clock A. M. of any day was not a valid exercise of the police power of the State but was an infringement on the constitutional right of contract. The court, in the course of its opinion, in order, doubtless, that it might not commit itself to the view that the last clause,—that is, the ten hour clause,—of the statute was invalid, say: "It is to be observed that it [the portion of the statute under consideration] is not a regulation of the number of hours of labor for working women. The enactment goes far beyond this. It attempts to take away the right of a woman to labor before six o'clock in the morning or after nine o'clock in the evening, without any reference to other conditions. * * * She is prevented, however willing, from engaging herself in a lawful employment during the specified periods of the twenty-four hours. Except as to women under twenty-one years of age this was the first attempt on the part of the State to restrict their liberty of person or their freedom of contract in the pursuit of a vocation. I find nothing in the language of the section which suggests the purpose of promoting health, except as it might be inferred that for a woman to work during the forbidden hours of night would be unhealthful. If the inhibition of the section in question had been framed to prevent the ten hours of work from being performed at night or to prolong them beyond nine o'clock in the evening, it might more readily be appreciated that the health of women was the matter of legislative concern. That is not the effect nor

the sense of the provision of the section with which, alone, we are dealing. It was not the case upon which this defendant was convicted. If this enactment is to be sustained, then an adult woman, although a citizen, and entitled, as such, to all the rights of citizenship under our laws, may not be employed nor contract to work in any factory for any period of time, no matter how short, if it is within the prohibited hours,—and this, too, without any regard to the healthfulness of the employment. It is clear, as it seems to me, that this legislation cannot, and should not, be upheld as a proper exercise of the police power." It would seem, therefore, that this case cannot be relied upon legitimately to sustain the position that a statute limiting the hours in which women may work in mechanical establishments or factories or laundries to ten hours in any one day would be unconstitutional.

The statute considered in *Ritchie* v. *People* is entitled "An act to regulate the manufacture of clothing, wearing apparel, and other articles in this State, and to provide for the appointment of State inspectors to enforce the same, and to make an appropriation therefor." (Laws of 1893, p. 99.) The section of the act which is material to the consideration of the question now in hand, and which was held unconstitutional, was section 5, and reads as follows: "No female shall be employed in any factory or workshop more than eight hours in any one day or forty-eight hours in any one week." It will be seen from a comparison of the act of 1893 with the act of 1909 that they differ in two particulars: First, as was observed in the *Williams case,* there is nothing in the title of the act of 1893, or in the act itself, which indicates or suggests that the act was passed for the purpose of promoting the health of women, except, as might be inferred from the provisions of section 5, that it might be conducive to the health of women to prohibit them from working more than eight hours in any one day, while the act of 1909 expressly provides in

its title that the limitation upon the number of hours which women shall be required or permitted to work in mechanical establishments or factories or laundries is passed with the view "to safeguard the health of such employees." This difference between the acts may not be so material but that if this were the only difference it might be difficult to differentiate the *Ritchie case* satisfactorily from the case at bar. The second proposition upon which the cases differ is this: The act of 1893 provides for an eight hour day while the act of 1909 provides for a ten hour day in which women shall be permitted to work in mechanical establishments or factories or laundries. Can it be said if the limitation upon the number of hours which women were permitted to work in the designated callings in the act of 1893 had been fixed at ten hours instead of eight hours the court would have held the act unconstitutional as an unreasonable exercise of the police power of the State or that the act would have been held obnoxious to the constitution as special or class legislation? We do not think it can so be said, as there is throughout the opinion a veiled suggestion which indicates that it was the opinion of the court that the limitation of the right to work longer than eight hours was an unreasonable limitation upon the right to contract, while the right to contract for a longer day, at least under some circumstances, might be a valid limitation upon the right of contract. To emphasize this view we here set out certain excerpts from that opinion. On page 113 the court say: "Inasmuch as sex is no bar, under the constitution and the law, to the endowment of woman with the fundamental and inalienable rights of liberty and property, which include the right to make her own contracts, the mere fact of sex will not justify the legislature in putting forth the police power of the State for the purpose of limiting her exercise of those rights, unless the courts are able to see that there is some fair, just and reasonable connection between such limitation and the public health, safety or

welfare proposed to be secured by it." . And again, on page 114: "There is no reasonable ground—at least none . which has been made manifest to us in the arguments of counsel—for fixing upon eight hours in one day as the limit within which woman can work without injury to her physique, and beyond which, if she work, injury will necessarily follow. But the police power of the State can only be permitted to limit or abridge such a fundamental right as the right to make contracts, when the exercise of such power is necessary to promote the health, comfort, welfare or safety of society or the public." And again, on page 115: "Tiedeman, in his work on Limitations of Police Power, says: 'In so far as the employment of a certain class in a particular occupation may threaten or inflict damage upon the public or third persons, there can be no doubt as to the constitutionality of any statute which prohibits their prosecution of that trade.'" And again, on page 117, quoting from *In re Jacobs,* 98 N. Y. 98: "When a health law is challenged in the courts as unconstitutional on the ground that it arbitrarily interferes with personal liberty and private property without due process of law, the courts must be able to see that it has at least in fact some relation to the public health, that the public health is the end actually aimed at, and that it. is appropriate and adapted to that end." And the court, on page 113, also quote without dissent the following paragraph from Cooley on Constitutional Limitations, that "some employments * * * may be admissible for males and improper for females, and regulations recognizing the impropriety and forbidding ·women engaging in them would be open to no reasonable objection." We therefore repeat what we have once said, that it is not at all clear that the court, in rendering the opinion in the *Ritchie case,* where an eight hour day was held to be unconstitutional, was of the opinion a statute fixing a ten hour day in which women might work would be unconstitutional.

244—34

In the Oregon case the statute which was approved by the Supreme Court of Oregon, and afterwards by the Supreme Court of the United States, fixed the time which women should be permitted to work in any one day at ten hours. The Massachusetts statute approved in *Commonwealth* v. *Hamilton Manf. Co. supra,* limited the number of hours which women should be permitted to work in any one day to ten hours. The Nebraska statute passed upon in the *Wenham case* also limited the number of hours which women should be permitted to work in one day to ten hours, and the Washington statute passed upon in the *Buchanan case* limited the number of hours which women should be permitted to work in any one day to ten hours, and the same number of hours was fixed by the New York statute referred to in *People* v. *Williams, supra.*

We think the general consensus of opinion, not only in this country but in the civilized countries of Europe, is, that a working day of not more than ten hours for women is justified for the following reasons: (1) The physical organization of woman; (2) her maternal functions; (3) the rearing and education of children; (4) the maintenance of the home; and these conditions are so far matters of general knowledge that the courts will take judicial cognizance of their existence. (*Muller* v. *Oregon, supra.*) We are of the opinion that a statute prohibiting women from working in a mechanical establishment or factory or laundry more than ten hours in any one day is not an arbitrary or unreasonable limitation upon the right of women to contract. Surrounded as women are by the changing conditions of society and the evolution of employment which environs them, we agree fully with what is said by the Supreme Court of Washington in the *Buchanan case:* "Law is, or ought to be, a progressive science. While the principles of justice are immutable, changing conditions of society and the evolution of employment make a change in the application of principles absolutely necessary to an in-

telligent administration of government.  In the early history of the law, when employments were few and simple, the relative conditions of the citizen and the State were different, and many employments and uses which were then considered inalienable rights have since, from the very necessity of changed conditions, been subjected to legislative control, restriction and restraint.  This all flows from the old announcement made by Blackstone, that when man enters into society, as a compensation for the protection which society gives to him he must yield up some of his natural rights, and as the responsibilities of the government increase and a greater degree of protection is afforded to the citizen the recompense is the yielding of more individual rights.  * * *  The changing conditions of society have made an imperative call upon the State for the exercise of these additional powers and the welfare of society demands that the State should assume these powers, and it is the duty of the court to sustain them whenever it is found that they are based upon the idea of the promotion and protection of society."

The appellees have raised other objections to the constitutionality of the act of 1909 limiting the number of hours which women shall have the right to work in mechanical establishments or factories or laundries to ten hours in any one day.  While these objections have not been overlooked, we deem them of too slight importance to justify their discussion in this opinion.

We are of the opinion the act of 1909 is constitutional in all of its particulars and as an entirety.

The decree of the circuit court will be reversed.

*Decree reversed.*

Mr. JUSTICE VICKERS, dissenting.