## Anton Vogt, Appellee, v. Southern Coal, Coke & Mining Company, Appellant.

1. MASTER AND SERVANT, § 709*—*when negligence in failing to provide reasonably safe tools and appliances is question for jury.* In an action for injuries to a machinist's helper, caused by the rebounding of a wedge upon being struck by a sledge hammer wielded by plaintiff, evidence that the wedge was not equipped with a handle and the danger of its rebounding was increased by the elasticity of the metal upon which it was being used, coupled with evidence of other practicable and safer methods of doing the work, presented a question for the jury as to defendant's negligence in failing to furnish reasonably safe tools and appliances for doing the work.

2. WORKMEN'S COMPENSATION ACT, § 2*—*what is effect of rejection of act by employer engaged in extrahazardous employment.* A machinist's helper or "top man" in a mine, injured by the rebounding of a wedge while repairing a hoisting engine used in raising coal from defendant's mine, is engaged in extrahazardous employment of mining within the Workmen's Compensation Act, and hence where the employer rejected the act it is deprived of the defenses of contributory negligence, assumed risk and fellow-servant relation.

3. WORKMEN'S COMPENSATION ACT, § 2*—*when defense of assumed risk may not be interposed by employer rejecting.* The defense of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

assumed risk cannot be interposed in favor of an employer engaged in an extrahazardous employment who had rejected the Workmen's Compensation Act against an employee injured by the rebounding of a wedge on being struck by a sledge hammer, under a contention that notwithstanding the rejection of the act an employer ˙is not deprived of the defense that the employee assumed the risk and dangers of which he knew, or of which he ought to have known by the exercise of ordinary care.

4. E✝IDENCE, § 428*—*when witness qualified to testify as expert upon question involved in injury by rebounding of wedge in cutting steel.* A witness testifying as an expert who had been employed in defendant's mine, and who had had more or less experience during that time in connection with the work of machinist, is sufficiently qualified to testify as an expert upon the question involved in the injury of an employee by the rebounding of a wedge used in cutting steel, although he had had nothing to do with cutting steel, the character of his experience going only to the credibility and weight to be given his testimony.

5. TRIAL, § 304*—*when propositions of law are properly refused.* Propositions of law, general in character, to the effect that plaintiff cannot recover on his declaration or on certain counts, or that defendant was not guilty of the negligence charged, are properly refused.

6. TRIAL, § 302*—*when proposition of law in action for personal injuries is properly modified.* In an action to recover for injuries sustained by the rebounding of a wedge, a proposition of law: "That if the use of the chisel which was used by plaintiff in the work in question was proper and such chisel was a usual, customary and proper instrument to be used in such work, then the plaintiff cannot recover in this case," is properly modified to read: "That if the use of the wedge which was used by plaintiff, in the manner in which it was used in the ⸢work in question was proper, and such wedge, as used, was a usual, customary and proper instrument to be used in such work,˙then the plaintiff cannot recover in this case." ˴

7. TRIAL, § 304*—*when proposition of law in action for personal injuries is properly refused.* In an action to recover for injuries sustained by an employee by the rebounding of a wedge upon being struck by a sledge, a proposition of law "That if the defendant exercised reasonable care in choosing reasonably safe tools and instruments to do the work in question and in using the wedges in question for the purposes for which they were used, and that in using the same the defendant could not reasonably anticipate that a person using the wedge would be injured as plaintiff was injured,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

then the plaintiff cannot recover," is properly refused as limiting the manner in which plaintiff was injured instead of being broad enough to include injuries from its use in and about the work generally.

Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.    Heard in this court at the October term, 1917.    Affirmed.    Opinion filed April 5, 1918.    *Certiorari* denied by Supreme Court (making opinion final).

KRAMER, KRAMER & CAMPBELL, for appellant.

WEBB & WEBB, for appellee.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

An action on the case was instituted in the Circuit Court of St. Clair county by appellee against appellant to recover for injuries received by appellee alleged to have been caused by the flying or bounding out of a steel wedge that was being driven into a notch in a metallic disc in order to loosen it from the shaft to which it was attached.    The original declaration consists of two counts, both of which allege that appellant had elected not to pay compensation under the Workmen's Compensation Act and, in substance, charge negligence on the part of appellant in furnishing and providing appellee with a certain wedge or chisel without a handle or other means of preventing it from flying or bounding when struck with a sledge hammer; that the use of such wedge without a handle or other attachment to prevent it from bounding when struck a heavy blow with a sledge hammer was unsafe and dangerous, all of which it is alleged appellant well knew, or by the exercise of due care could have known.

The second count is substantially the same as the first except it is alleged that the master mechanic and foreman of appellant ordered appellee to strike said chisel or wedge with said hammer.    To said declara-

tion appellant filed a plea of the general issue. A trial had at the September term, 1916, of said court resulted in a verdict in favor of appellee for $1,500. A motion made by appellant for a new trial was confessed by appellee and a new trial was ordered After said new trial had been ordered by leave of court, appellee filed one additional count, in which said additional count it was charged, in substance, that on account of the elasticity of the metal composing the disc the method of removing the disc was unsafe and dangerous in that the chisels or wedges were likely to fly or bound away from said disc while being struck by said sledge hammer. A jury was waived and a trial was had by the court resulting in a finding and judgment in favor of appellee for $2,500. To reverse said judgment this appeal is prosecuted.

The record discloses that appellee was employed as "top man" or machinist's helper at the New Baden mine owned and operated by appellant. On March 9, 1916, he was sent to the engine house by William Grimmer, the top boss, and directed, with other helpers, to split a circular disc, being about 4 feet in diameter and set tightly on the shaft, the disc having had a break in it. The method pursued was to saw into the upper edge of the disc with a hack saw, making an opening which was widened by the use of small iron chisels. After using the small chisels two large wedges were placed in the opening, one on top and near the edge and one at an angle of 40 degrees. By striking these wedges simultaneously with sledge hammers the opening would widen and break down the elasticity of the disc until it split apart. The sawing was commenced at about 3 o'clock and was finished at about 4 o'clock, appellee sawing part of the time. From then on until 5 or 6, small chisels were used, sometimes being held in place with blacksmiths' tongs, at other times it seems they were held in place with the hand. Thereafter wedges an inch and a half or

an inch and three-quarters square and about three and a half inches long, with an eye for a handle, but without handles, were then set into the opening in the manner above described and struck heavy blows with sledge hammers. One Frank Chadley, a machinist, worked with appellee in striking said wedges. They worked about forty-five minutes in all and during that time said wedges bounded or flew out several times, estimated by the witnesses at from four to six. Sometimes the wedge would fall to the floor and at other times it would fly or bound some 5 or 6 inches. Later in the evening the wedge being hit by appellee bounced, or was forced from the opening about 3 feet, and struck appellee in the head, necessitating the removal of one eye, and causing the impairment of the vision of the other.

It is first contended by appellant that there is no negligence charged in the declaration. In other words, appellant contends that the wedge furnished by it for said work was a proper wedge and that the manner of breaking down or removing said disc from said shaft adopted by it was a proper and practical method. On the other hand, appellee insists there should have been a handle attached to said wedge in order that when struck the same would not bound or fly so as to endanger those doing said work.

It was further insisted by appellee that a series of holes should have been drilled in said disc so that the same could have been more easily broken down and removed, and that another feasible and practical way to have removed the same would have been to have used an acetylene device for said purpose. The evidence was conflicting as to whether the furnishing of wedges without handles amounted to negligence.

The evidence on the part of appellee tends to show that the furnishing of wedges without handles, especially in view of the elasticity of the metal sought to be broken down, was negligence. On the other hand,

the evidence on the part of appellant tended to show that if handles had been attached to said wedges, the jar or sting would have been so severe that it would have been hard to hold the same, and also that there would be danger in the sledge hitting the handle at times instead of the wedge. We think, however, there was sufficient evidence to warrant the court in finding that appellant was negligent in not using due care to furnish reasonably safe tools or appliances for the work in question. At any rate, the finding of the court thereon is not against the manifest weight of the evidence and we should, therefore, not disturb the judgment for said reason alone.

It is next contended by appellant that even though it should be held guilty of negligence as charged in the declaration, and notwithstanding appellant had elected not to pay compensation under the Workmen's Compensation Act, the defenses of assumed risk, fellow-servant and contributory negligence would not be taken away from it for the reason it is contended that appellee was not engaged in an extrahazardous employment as contemplated by the Workmen's Compensation Law. In other words, that the employment of appellee at the time he was injured would not come within the term "mining" as contemplated by the statute.

Section 2 of the Workmen's Compensation Act [Callaghan's 1916 St. Supp. ¶ 5475(2)], approved June 28, 1913, in force July 1, 1913, provides, among other things, that: "Every employer enumerated in section 3, paragraph (b) shall be conclusively presumed to have filed notice of his election as provided in section 1, paragraph (a), and to have elected to provide and pay compensation according to the provisions of this act, unless and until notice in writing of his election to the contrary is filed with the Industrial Board and unless and until the employer shall either furnish to his employee personally or post at a conspicuous place

in the plant, shop, office, room or place where such employee is to be employed, a copy of said notice of election not to provide and pay compensation according to the provisions of this act.''

Paragraph (b) of section 3 [Callaghan's 1916 St. Supp. ¶ 5475(3)(b)] provides: ''The provisions of paragraph (a) of this section shall only apply to an employer engaged in any of the following occupations, enterprises or businesses, namely:'' among others, mining, surface mining or quarrying.

. In determining whether or not a person has received an injury arising out of and in the course of his employment, the Supreme Court has not adopted a strict construction of the Compensation Act but h⌒s held that if the occupation in which the injured person was engaged could reasonably be referable to the principal work engaged in by the employer that construction should be adopted, and if the employer was engaged in an extrahazardous employment, as contemplated by the statute as above set forth, the injured person should be held to be within the provisions of the statute and the defenses of assumed risk, contributory negligence and fellow-servant would not be available to the employer. *Armour & Co. v. Industrial Board of Illinois,* 273 Ill. 590; *Parker-Washington Co. v. Industrial Board of Illinois,* 274 Ill. 498; *Suburban Ice Co. v. Industrial Board of Illinois,* 274 Ill. 630; *Gibson v. Industrial Board of Illinois,* 276 Ill. 73.

In this case it was stipulated on the hearing that appellant had elected not to be bound or pay compensation under the Workmen's Compensation Act. It is therefore only necessary for us to determine as to whether or not appellee was engaged or employed in and about the business of appellant in its mining operations. In *Gibson v. Industrial Board of Illinois, supra,* the employer was engaged in an enterprise where inflammable products were stored and conveyed in dangerous quantities. It was held, however, that

in order to come within the act that the person injured need not at the time have been actually handling or conveying the inflammable product. The court at page 75 says: "It is practically conceded by counsel for plaintiffs in error that the act would apply if the deceased had met his death because of a fire or explosion of the highly inflammable and explosive materials he was handling in the course of his occupation. It is contended, however, that the exact occupation of the deceased and his duties in connection therewith were not such as properly come under the act, and it is argued that the duties of the deceased in driving the oil wagon were no different and the dangers no greater than they would have been in driving any kind of a loaded wagon; that there was no danger of an explosion under such circumstances, and that the mere fact that he was engaged in transporting gasoline and coal oil in a large tank wagon from one place to another did not necessarily bring him in the occupation of handling dangerous explosives in large quantities. It is not argued that the classification made by the legislature is unconstitutional or unreasonable. It is true that the accident from which the deceased came to his death did not result from the nature of the product which he carried, and, as contended by counsel for plaintiffs in error, the same accident might have happened if he had been hauling a load of farm products or any other commodity. There is no question but that he was habitually employed, and had been for several months, in driving one of the oil wagons of plaintiffs in error. In *Armour & Co. v. Industrial Board of Illinois*, 273 Ill. 590, while the exact point raised in this case was not raised or decided, we affirmed the judgment of the Circuit Court of Cook county affirming a finding and award of the Industrial Board awarding compensation to the widow of a teamster, an employee of the Armour Packing Company, who had died as a result of injuries re-

ceived from falling from his wagon while delivering goods of his employer. In *Parker-Washington Co. v. Industrial Board of Illinois,* 274 Ill. 498, it was held where a teamster employed by a teaming company which had contracted to deliver a quantity of crushed stone to a contracting company engaged in street paving, while standing up and reaching over to whip the horses he was driving lost his balance and fell under the wheels of the wagon and was killed, that the employer was liable under the Workmen's Compensation Act. In *Suburban Ice Co. v. Industrial Board of Illinois,* 274 Ill. 630, we held that where a teamster employed by an ice and fuel company, whose duty it was to deliver ice and fuel and work in and around the place and care for the horses of the company, was kicked by one of the horses and died from the effects thereof, his widow and administratrix could recover under the provisions of the Workmen's Compensation Act. * * * We think the occupation of the deceased was sufficiently connected with the extrahazardous business of the plaintiffs in error, and such business being under the act, his widow was entitled to recover under its provisions."

In view of the holding of the Supreme Court in the above-mentioned case, we are of the opinion that appellee was at the time of receiving his injury engaged in the extrahazardous employment of mining as contemplated by the statute. The hoisting engine being repaired was an engine used for lifting the coal at appellant's mine, and the evidence tended to show that the mining operations at that point were tied up by reason of the break in this disc and that appellee at the very time of receiving his injury was employed in the business of repairing said engine in order that said mining operations could be resumed. His injuries occurred in the course of and grew out of his employment in and about the mining business conducted by appellant, and the defenses of contributory negligence,

assumed risk and fellow-servant were therefore not available to appellant.

It is next contended by appellant that even if the employment of appellee be held to be extrahazardous under the Compensation Law, it does not deprive appellant of the defense that the employee assumed the risk and dangers of which he knew of, or which he ought to have known by the exercise of ordinary care. Without going into a discussion of the point raised by appellant, it is only necessary for us to say that so far as the defense of assumed risk is involved in this proceeding, it is taken away by the provisions of the Compensation Act.

It is next contended by appellant that the court erred in its rulings on the evidence, it being the contention of appellant that the witness, C. P. Born, who testified as an expert on behalf of appellee, was not properly qualified as such for the reason that he had not had anything to do with cutting steel. The evidence, however, discloses that this man had worked in appellant's mine for some 14 years and had had more or less experience during that time in connection with the work of machinist. He was therefore qualified to give testimony in regard to the question involved, the character of his experience going only to the credibility and weight to be given his testimony.

Lastly, it is contended by appellant that the court erred in its rulings on the propositions of law submitted by it. Propositions Nos. 1 to 5 inclusive, refused by the court, are general in character and are to the effect that appellee cannot recover on his declaration or on certain counts of the declaration or that appellant was not guilty of negligence charged in the declaration. Propositions 6, 7, 8, 9, 10, 11, 12 and 13 were all based on the assumption that the defenses of assumed risk, contributory negligence and fellow-servant were not taken away by the Workmen's Compensation Act and are sufficiently disposed of by what we

have already said. The court therefore did not err in refusing to hold appellant's propositions 1 to 13 inclusive.

Proposition No. 14 is as follows: "That if the use of the chisel which was used by plaintiff in the work in question was proper and such chisel was a usual, customary and proper instrument to be used in such work, then the plaintiff cannot recover in this case." This proposition was refused as tendered but was modified so as to read as follows: "That if the use of the wedge which was used by plaintiff, in the manner in which it was used in the work in question was proper, and such wedge, as used, was a usual, customary and proper instrument to be used in such work, then the plaintiff cannot recover in this case." The court did not err in modifying said proposition and in holding it as so modified.

Proposition No. 16 is as follows: "That if the defendant exercised reasonable care in choosing reasonably safe tools and instruments to do the work in question and in using the wedges in question for the purposes for which they were used, and that in using the same the defendant could not reasonably anticipate that a person using the wedge would be injured as plaintiff was injured, then the plaintiff cannot recover." The fault with this proposition is, it limits the manner in which appellee was injured while it should have been broad enough to include injuries from its use in and about said work generally.

Finding no reversible error in the record the judgment of the trial court will be affirmed.

*Judgment affirmed.*